RCVD - USDC COLA SC
MAR 28 '24 PM4:37

Amendment 3/28/2024

May v CHE

      Dr. May met expectations and did not have performance related issues during her employment at the South Carolina Commission on Higher Education. Dr. May was willing to collaborate on tasks and was effective at her job. Dr. May provided a work product as directed, followed the office's guidelines, and was not making errors in her work. Moreover, Dr. May was not counseled or reprimanded regarding any of these alleged performance related issues. To the contrary, the programs Dr. May worked on were approved by the SC Commission on Higher Education. Dr. May provided weekly updates to Dr. Dittman, her direct supervisor, during one-on-one meetings; and Dr. May received performance evaluations reflecting that she exceeded expectations. (Ex. 1: Performance Evaluations). Dr May agreed to meet with the Inspector General's Investigator approximately 3 hours prior to her termination (May 30, 2023, email confirmation). This is one of many examples of discrimination and relation that Dr May suffered from while serving at the SC CHE. Dr May hired an attorney a week after she was terminated on the basis that she donated books to the Kershaw County Library during her lunch break (recording; Dr Dittmann rationale for termination, May 30, 2023). Dr May spent no more than 5 minutes in the KC Library before returning to work (affidavit by KC Librarian). Dr May sought legal counsel in hopes of being reinstated because she said "she enjoyed the work she was doing for the students of South Carolina".

      The SC CHE encouraged the entire SC CHE staff to complete an "anonymous" climate survey, in which Dr May reported concerns about a hostile work environment, leadership, and an assault she witnessed on or around May 11, 2023. Dr. May then received an impromptu call from Shared Services as an example of continued discrimination based on retaliation for providing her responses to the climate survey. During that call, she was asked a few questions about the concerns she reported in the survey, then Shared Services accused her of going to a book signing during her lunch break. Dr. May explained multiple times during the call that she donated books and that it was not a book signing, but Shared Services continued to press the matter and continuously accused her of attending a book signing during work hours. After more than two hours on the call with Shared Services, Dr. May requested to finish the conversation at another time when she could provide documentation to address the concerns.

      Dr. May followed up with Shared Services in an email and explained that she felt the issue regarding her lunch break should have been addressed in a separate meeting from the survey discussion, and that she would be happy to follow up to resolve any

1

outstanding questions or concerns about how she spent her lunch break. She received an automated response that the Shared Services representative would be out until May 30, 2023. Dr. May was terminated on May 30, 2023, based on her sex, disability, and complaints of discrimination, not because of performance.

     Dr. Gheesling, the male counterpart in Academic Affairs at the SC CHE, received a private office for himself further demonstrating the discriminatory practices of the SC CHE Academic Affairs leadership in an attempt to intimidate and bully female workers. The male counterpart in Academic Affairs not only had additional privileges such as an office with a view, ability to work remotely, attend his daughter's school functions without professional damage, but he also earned a higher salary and privileges  than Dr. May, further showcasing the discriminatory practices Dr May was subjected to.  Dr. Gheesling was not the Director of Academic Affairs for the Tennessee Higher Education Commission, and he did not have direct policy experience performing the same or similar duties. He was the Coordinator of Academic Affairs, which is a more administrative than policy-based position. Upon information and belief, he was preselected for the job by the Director of Strategic Initiative, Ms. Ward, and the Hiring Committee was instructed to hire him thus preventing the equal opportunity to employment, allowing continued slander of Dr May within the SC CHE, and preventing advancement into another department.  Dr. May holds a Master's Degree in Political Science and Government Studies. She has years of experience related to higher education policy that would warrant an equal or higher salary than Dr. Gheesling and the same or more authority. Dr. May has been in higher education for 10 years, establishing programs, performing OSHA regulation work for workforce development, working with state agencies in research, and teaching policy-specific classes to higher-education.

     Likewise, Dr. Gheesling was offered more opportunities to telecommute, gain superiority in the office, and influence by sitting on hiring committees, calling references (even those of Dr. Berry and Dr. May) with less than 6 weeks on the job, further yielding his influence regarding who succeeds and who doesn't. None of the female employees under Dr. Dittman were allowed to telework as soon as Dr. Gheesling or given such power further examples of the SC CHE discriminating based on gender.

     Dr. Dittman further discriminated and retaliated against Dr. May by: micromanaging Dr. May, including Dr. May's schedule and working times; sending Dr. May Zoom messages after Dr. May's work day ended; delaying approval of Dr. May's sick leave until the morning of the requested leave; making inappropriate comments regarding Dr. May's mask, hair, and appearance; slamming the door in Dr. May's face; looming over Dr. May's computer screen to intimidate or micromanage Dr. May; instructing Dr. Gheesling to stalk Dr. May's social media pages; and using Shared

Services to intimidate Dr. May, rather than providing leadership and guidance if there were issues.

Dr May emailed President Monhollon to intervene in hopes of providing guidance and leadership given her experiences of discrimination in Academic Affairs. Dr May met with President Monhollon regarding the leadership style of Dr Dittmann and asked him to please intervene. Dr May expressed concerns that retaliation and actions meant to bully and intimidate her.

The next meeting Dr May had with Dr Dittmann, Dr May was humiliated over a notification assignment. Dr Dittmann stated these are "rubber stamps" we acknowledge them and include in inventory that's the extent. With Dr Berry in the room Dr Dittmann wanted Dr May to go one by one to provide a summary of each notification, drilling on details of 32 notifications in the most specific terms. Dr May was mocked by Dr Dittmann until the meeting ran out of time. Dr May fell victim to discrimination and retaliation because she sought help from President Monhollen.

Dr Dittmann schedules a meeting Dr May for Monday to discuss the notifications with added detail following the humiliating and derogatory meeting over notifications that just occurred. In an email, Dr May askes Dr Dittmann given this is a new process of evaluation, not discussed in the team meeting, should Dr Ghessling and Dr Berry be present. Dr Dittman replies with "she's not at liberty to say the details of the changes she is making," Dr May printed this response and and the zoom notification description sent by Dr Dittmann and the revised message sent by Dr Dittmann in the zoom meeting detail function as examples of the continued discrimination meant to intimidate Dr May, harass and bully Dr May, initiated by the discriminatory practices of Dr Dittmann and the SC CHE.

Without a Performance Action Plan, negative counseling, or any other issue to allude or suggest that Dr May was not completing her tasks, Dr Dittmann arranged her termination as "not a good fit". When asked for specific examples, Dr Dittmann stated Dr May donated books to the library on her lunch (recording, May 30, 2023); outlining that despite two consecutive exceeding performance reviews she would be terminated.

Dr. Dittman has since been terminated by the SC CHE and the Inspector General's Office has issued statements and testimony to the SC Legislative Oversight Committee regarding the inadequacy of leadership by the SC CHE, including the abuse of power, lack of progressive discipline, and high turnover rates particularly of women and people of color in Academic Affairs under the supervision of Dr Dittmann for over a year and a half. These discriminatory processes lead to retaliation and intimidation, which caused Dr May to seek medical advice and medication to help her work-related anxiety caused

by the toxic and hostile nature created by discriminatory practices, all which Dr. May was subjected to in her position by Dr. Dittman.

Dr. May has provided sufficient evidence of discrimination and retaliation in her Charge of Discrimination filed with the EEOC. She has been granted the right to sue. Dr May has attempted several times to resolve the issue before and after the termination of Dr Dittmann in October of 2023 and after the resignation of President Rusty Monhollen in January of 2024. The SC CHE has failed to respond to any such requests of reinstatement, yet have several positions open in Academic Affairs. The SC CHE has also prevented and discouraged further employment opportunities of Dr May by tampering with her employment file and further using intimidation to discourage her access to her employment file, while causing continued financial stress and impacting her mental and emotional health. Dr May requested her employment file on Jan 10, 2024 after hundreds of applications, interviews she had not landed a position within the State of South Carolina. The shared services of the SC CHE violated her right to those records and did not produce them until legal counsel stepped in to assist. Mr Tippens required a date and time for Dr May to come to the office in person, and he would have someone there with her to make copies. This act of resistance to produce the records and game-playing was a tool of continued retaliation and discrimination against Dr May. The SC CHE and shared services released the employment records on 2/14/2024 after many email correspondences through Dr May's attorney, the SC CHE legal counsel and shared services.