

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| CATELIN MARGARET MAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No.: 3:24-01000 |
| | § | |
| S.C. COMMISSION ON HIGHER | § | |
| EDUCATION | § | |
| | § | |
| Defendant. | § | |

**ORDER ADOPTING REPORT AND RECOMMENDATION,
SUSTAINING PLAINTIFF'S OBJECTIONS IN PART,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND REMANDING THE CASE TO THE MAGISTATE JUDGE**

## I.    INTRODUCTION

Plaintiff Catelin Margaret May filed this suit against her former employer, the South Carolina Commission on Higher Education (the Commission), asserting violations of the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964.

This matter is before the Court for review of the Report and Recommendation (the Report) of the United States Magistrate Judge suggesting to the Court the Commission's motion for summary judgment be granted.  The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

1

## II.     FACTS AND PROCEDURAL HISTORY

May began working at the Commission on February 6, 2023, as a Program Manager I with a salary of $73,500. Miriam Dittman, as the Director of the Office of Academic Affairs and Licensing, hired her and was her supervisor. Jessica Berry, another woman, was hired around the same time, and Corey Gheesling, a male, had been hired three months earlier, both also as level one Program Managers.

May alleges she suffered discriminatory treatment when she began working. She alleges Gheesling was treated more favorably than her and Berry in various ways, including better pay, office conditions, and autonomy.

May has described raising numerous issues with Dittman in attempts to address her concerns. She ultimately met with Rusty Monhollon, the Commission's President and Executive Director, on April 10, 2023, to discuss her complaints. On May 11, 2023, human resources personnel spoke with May concerning an allegation Berry had raised against Gheesling, along with several other issues.

On May 30, 2023, May was terminated from her position. The remaining factual details will be addressed below as they relate to each claim and May's objections.

The Magistrate Judge filed the Report on December 12, 2025. May filed objections to the Report on January 26, 2026, and the Commission filed a reply to her objections on February 9, 2026.

## III.     STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the

2

Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

This Court need not conduct a de novo review of the record "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## IV.     DISCUSSION AND ANALYSIS

In May's second amended complaint, she brings claims of: (1) unlawful discrimination under Title VII as to pay and employment conditions; (2) unlawful wage discrimination under the Equal Pay Act; and (3) unlawful retaliation in violation of both Title VII and the Equal Pay Act.

### A.     May's Claims of Title VII Discrimination

The Magistrate Judge recommends the Court grant summary judgment on May's claims of discrimination under Title VII. May objects on several points.

First, the Magistrate Judge suggests May abandoned her hostile work environment claim and her claim of wage discrimination under Title VII. May objects because she "has not abandoned any claims." Objections at 2. Nonetheless, she failed to advance any arguments or evidence in support of these claims. Her response to the Commission's motion for summary judgment is similarly silent. The objection will therefore be overruled.

Second, May has attempted to assert she was terminated on the basis of her sex. Plaintiff's Response in Opposition of Defendant's Motion for Summary Judgement at 40. The Magistrate

3

Judge rejected this argument because "such a claim is not pled in her Second Amended Complaint." Report at 18.

May objects for two reasons. First, she relies in part on allegations in her complaint related to the conditions of employment. Objections at 14. Those allegations, however, must be rejected because they are separate from any claim she was terminated because of her sex.

Second, May relies on the following paragraph of her complaint:

> On May 30, 2023, Defendant terminated Plaintiff because Plaintiff raised concerns and opposed the hostile and discriminatory employment practices by Defendant by paying Plaintiff and another female employee less than their male counterpart and treating Plaintiff and her other female colleague less favorable [sic] than their male counterpart.

Second Amended Complaint ¶ 29. Similarly, she alleged the Commission violated Title VII by "terminating her when she complained about the pay disparity." *Id.* at 11.

As is clear from this quoted language, May alleged the Commission fired her in retaliation rather than because of her sex. The complaint is devoid of any allegation it fired her because of her sex. Thus, the Magistrate Judge correctly determined May failed to raise this claim in her complaint. Parties are unable to raise a new claim in response to a motion for summary judgment.. *See Cloaninger ex rel. Est. of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (citations omitted) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."). Therefore, the objection will be overruled.

Finally, May objects to the Report because it "fail[ed] to address Plaintiff's disparate treatment argument . . . ." Objections at 14. May alleged in her amended complaint:

> Male employees, including Dr. Gheesling, were offered better office space and location; more advancement opportunities, supervisory authority and autonomy; less supervision and criticism from supervisors; shorter probationary periods, more telework opportunities, and better overall treatment.

4

Second Amended Complaint ¶ 19. Accepting the allegation as true, such discrimination on the basis of sex is unlawful under Title VII. *See Ocheltree*, 335 F.3d at 331 (explaining the anti-discrimination provision in Title VII "not only covers 'terms' and 'conditions' in the narrow contractual sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment.'" (alterations in original) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998))).

The Commission neglected to address this claim in its motion for summary judgment, and the Magistrate Judge failed to consider it in the Report. Therefore, to the extent the Court will grant the Commission's motion for summary judgment on May's claims of discrimination under Title VII, the Court declines to extend this ruling to May's claim of disparate treatment—other than as to pay—under Title VII. As such, the Court will sustain this objection.

**B.      Whether Summary Judgment is Proper on May's Equal Pay Act Claim**

May objects to the Magistrate Judge's recommendation to grant Cross Country's motion for summary judgment on her Equal Pay Act claim. Objections at 2-3.

**1.      Legal Standard**

Under the Equal Pay Act, it is unlawful to "discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility . . . ." 29 U.S.C. § 206(d)(1).

The Equal Pay Act uses a "burden-shifting framework." *U.S. Equal Emp. Opportunity Comm'n v. Maryland Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018) (citing *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 344 (4th Cir. 1994)). To prove her case, the Equal Pay Act plaintiff

must first present a prima facie case under the act. *Maryland Ins. Admin.*, 879 F.3d at 120 (citing *Brinkley-Obu*, 36 F.3d at 343).

"A plaintiff establishes a prima facie case of discrimination under the [Equal Pay Act] by demonstrating that (1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *Id.* (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).  Doing so creates a "presumption of discrimination." *Id.* (citing *Brinkley-Obu*, 36 F.3d at 343).

Once an Equal Pay Act plaintiff establishes the *prima facie* case, both the "burden of production and persuasion then shift to the defendant 'to show, by a preponderance of the evidence, that the wage differential resulted from one of the allowable causes enumerated by the statute.'" *Brinkley-Obu*, 36 F.3d at 344 (quoting *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 161 (4th Cir. 1992)).  Those permissible causes of wage inequality are: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.  29 U.S.C. § 206(d)(1).

### 2.     May's Claims

May alleges the Commission unlawfully discriminated under the Equal Pay Act because her starting salary was $73,500 while Gheesling's starting salary was $75,000.  The Commission asserts this salary difference was based on Gheesling's prior experience in a similar role at an equivalent state agency in Tennessee.

The Magistrate Judge concluded May "met her initial burden under the applicable framework," i.e. established the prima facie case.  Report at 7.  The Court agrees for the reasons stated in the Report.  The Magistrate Judge continued, however, and concluded the Commission

had sufficiently demonstrated the challenged wage inequality "was based on a factor other than sex" and "a reasonable jury would be compelled" to so find. Report at 10. May objects to this conclusion.

May argues the Report incorrectly concludes the pay differential based on Gheesling's prior experience is supported by "contemporaneous" evidence. Objections at 3. Further, she asserts the absence of contemporaneous documentary evidence means "a jury would not be compelled to accept" the Commission's explanation about Gheesling's prior experience. Objections at 3.

The Commission responds primarily by pointing to May's own admission during her deposition she was told at the time she was hired  Gheesling's salary was higher than her offer because of his relevant past experience. Reply at 4. It also points to testimony from Dittman—May and Gheesling's supervisor—at her deposition explaining Gheesling's higher salary was based on his prior experience. Reply at 3.

The Commission has offered a legitimate, gender-neutral reason for the pay disparity: Gheesling's prior experience in a similar role. Most tellingly, May was informed of this reason before she was hired, as she explained at her deposition. Memorandum in Support of Defendant's Motion for Summary Judgment, Exhibit A at 37:24-38:7 [Plaintiff's Deposition Excerpts]. The Court agrees with the Magistrate Judge about the strength of the Commission's proof of this explanation. A reasonable jury would be compelled to believe the Commission's gender-neutral explanation.

The Court is unpersuaded by May's argument the Commission lacks contemporaneous "documentary" evidence of the proffered explanation or evidence produced at the time Gheesling was hired. Objections at 3. The Commission has thoroughly demonstrated its gender-neutral reason for Gheesling's higher salary, even if they failed to write it down.

The Court therefore concludes "a rational jury could not have rejected [the Commission]'s proffered reason[] for the wage disparities." *Maryland Ins. Admin.*, 879 F.3d at 122. Thus, the Court will overrule this objection.

**C.      Whether Summary Judgment is Proper on May's Retaliation Claims**

May alleges the Commission unlawfully retaliated against her and fired her for engaging in activity protected by Title VII and the Equal Pay Act.

The Magistrate Judge concluded, "even if . . . May had engaged in protected activity . . . the defendant would nonetheless be entitled to summary judgment on these claims." Report at 14. As explained in the Report, the commission "proffered a legitimate, nondiscriminatory reason for terminating May."

The Magistrate Judge determined the Commission terminated May not in retaliation but because of her poor performance and for violating agency policies. Report at 16-18. May objects to this conclusion and asserts "[t]he proffered reasons by [the Commission] are a pretext for retaliation . . . ." Objections at 11.

Retaliation claims under the Equal Pay Act and Title VII are analyzed in the same way. *See Noonan v. Consol. Shoe Co.*, Inc., 84 F.4th 566, 574 (4th Cir. 2023) (stating the same elements for retaliation when analyzing claims under both Title VII and the Equal Pay Act). A retaliation plaintiff must demonstrate "the protected activity was causally connected to the adverse action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). To succeed, May must ultimately demonstrate "retaliation was a but-for cause of a challenged adverse employment action," or in other words, it was "the real reason" for May's termination. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015).

The Commission proffered evidence showing May was terminated for performance reasons.  First, it offers an email Dittman sent on May 19, 2023, outlining several issues with May's work.  Memorandum in Support of Defendant's Motion for Summary Judgment, Exhibit T.  In it, Dittman described, for example, how May evidently spent "several weeks" on a presentation and white paper "riddled with grammatical issues," included references "very rarely related to the information" she was supporting, "did not include any meaningful data," and exhibited substantial gaps in material coverage Dittman "would have expected to see" in the report.  *Id.*

Second, it is undisputed that, while teleworking from home, May left during work hours to donate copies of a book she authored to her local library.  Plaintiff's Deposition Excerpts at 87:17-19.  May was aware the Commission's policy forbade her from engaging in personal business while working remotely.  *Id.* at 103:14-22.  May also failed to  seek approval for this excursion. *Id.* at 96:16-22.

In light of this evidence, the Court agrees with the Magistrate Judge and adopts the analysis in the Report.  Thus, the Court will also overrule this objection.

Finally, however, May objects the Magistrate Judge "ignored Dittman's retraction" of the reason May was terminated during her deposition.  The Court has reviewed the alleged "retraction" and concludes a reasonable jury would be unable to believe it shows the performance issues were pretextual.  As such, this objection will also be overruled.

## V.    CONCLUSION

For the reasons explained above, the Court will adopt the Report and incorporate it herein. Plaintiff's objections are overruled, except as to her Title VII disparate treatment claim as noted above.  Defendant's motion for summary judgment is therefore **GRANTED**.

9

This case is **REMANDED** to the Magistrate Judge for consideration of May's Title VII disparate treatment claim.

**IT IS SO ORDERED.**

Signed this 26th day of March, 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
